[No. B156268. Second Dist., Div. Seven. Mar. 21, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
KATHERINE M. BROUGHTON, Defendant and Appellant.

308

310

**COUNSEL**

Sylvia Koryn, under appointment by the California Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PERLUSS, P. J.**—Penal Code section 1381.5 requires the district attorney to bring a defendant imprisoned in a federal correctional institution to trial or for sentencing in state criminal proceedings within 90 days after receiving an

assent from an authorized federal official for the release of the defendant from federal custody for that purpose. If the defendant is not brought to trial or for sentencing as required by section 1381.5,[1] the trial court must, on motion, "dismiss the action."

Although as a formal matter, if the trial court at a sentencing hearing suspends imposition of sentence and places the defendant on probation, the defendant has not yet been sentenced, we hold section 1381.5 applies only to defendants who have not been tried or afforded an initial sentencing hearing following conviction, not probationers awaiting a probation revocation hearing. Accordingly, we affirm the trial court's denial of Katherine M. Broughton's motion to dismiss the criminal actions against her notwithstanding the district attorney's failure to comply with the procedural requirements of section 1381.5 following Broughton's demand for a "speedy trial" of her probation revocation hearing.

FACTUAL AND PROCEDURAL HISTORY

1. *The State Actions*

On September 14, 1998, Broughton pleaded guilty to possession of rock cocaine (Health & Saf. Code, § 11350, subd. (a)) and was placed on diversion for 18 months (§ 1000.2) under specified terms and conditions. On December 18, 1998, Broughton pleaded guilty to transportation of marijuana (Health & Saf. Code, § 11360, subd. (a).) Diversion in the first matter was terminated, and the two cases were scheduled for sentencing. On January 19, 1999, the trial court suspended imposition of sentence in both cases and placed Broughton on three years' felony supervised probation with certain terms and conditions, including the condition she serve 210 days in county jail.

2. *The Federal Case*

On October 2, 1999, Broughton was sentenced to 30 months in a federal correctional facility. The record does not identify the federal charges for which she was tried or convicted.

3. *The First Probation Violation*

On January 19, 2001, Broughton appeared in the state trial court and admitted (and the court found true) that she had violated the terms of her

---

[1]Statutory references are to the Penal Code unless otherwise indicated.

probation by deserting probation in both state cases.[2] The trial court revoked probation, then reinstated it in both cases with the condition that she serve an additional one year in county jail. Probation was to terminate upon her release from jail. Pursuant to Broughton's request, the court stayed the county jail condition of probation until January 31, 2001, and ordered Broughton to surrender on that date. Broughton did not inform the court of her federal sentence or otherwise indicate an inability to surrender herself for custody.[3]

### 4. The Second Probation Violation

On January 31, 2001, Broughton failed to surrender as ordered. Instead, the program director of a federal parole center informed the trial court that Broughton was in federal custody and had approximately five months left on her 30-month federal sentence. The trial court revoked probation and issued a bench warrant.

### 5. The Section 1381.5 Demand for a "Speedy Trial" in the State Cases

On April 13, 2001, while incarcerated in a federal correctional facility, Broughton filed in the state trial court an in propria persona "Motion for Speedy Trial or Speedy Disposition of Warrant(s)" under section 1381.5 (April motion).[4] Broughton demanded a "speedy trial" "on all actions pending against her" in the state jurisdiction. The April motion stated Broughton

---

[2]Broughton deserted probation immediately after it was granted in January 1999, approximately 10 months before her conviction and incarceration on the federal offense.

[3]It is not clear how Broughton, who began serving a 30-month federal sentence in October 1999, was able to appear at the state hearing on January 19, 2001. Although the trial court speculated Broughton may have been in a halfway house at that time, nothing in the record confirms that suggestion.

[4]Section 1381.5 provides: "Whenever a defendant has been convicted of a crime and has entered upon a term of imprisonment therefor in a federal correctional institution located in this state, and at the time of entry upon such term of imprisonment or at any time during such term of imprisonment there is pending in any court of this state any criminal indictment, information, complaint, or any criminal proceeding wherein the defendant remains to be sentenced the district attorney . . . upon receiving from such defendant a request that he be brought to trial or for sentencing, shall *promptly inquire* of the warden or other head of the federal correctional institution in which such defendant is confined whether and when such defendant can be released for trial or for sentencing. If an assent from authorized federal authorities for release of the defendant for trial or sentencing is received by the district attorney he shall bring him to trial or sentencing within 90 days after receipt of such assent, unless the federal authorities specify a date of release after 90 days, in which event the district attorney shall bring the prisoner to trial or sentencing at such specified time . . . . [¶] If a defendant is not brought to trial or for sentencing as provided by this section, the court in which the action is pending shall, on motion or suggestion of the district attorney, or representative of the United States, or the defendant or his counsel, dismiss the action." (Italics added.)

was scheduled to be released from the Federal Correctional Institution, Dublin, on December 4, 2001. The trial court placed the motion in Broughton's case file and took no further action. There is no evidence the motion was served on the district attorney or Broughton's probation officer.

On October 4, 2001, the district attorney's office received a section 1381.5 "speedy trial" demand from Broughton (October demand). This demand listed Broughton's projected release date only as "4, 2002," omitting the month. Following receipt of the October demand the district attorney's office did not inquire of the head of the federal correctional institution in which Broughton was confined whether and when Broughton could be released for sentencing in the state matters, as required by section 1381.5.

Broughton was released from federal custody on January 8, 2002. On January 18, 2002, Broughton appeared in the state court and moved to quash the bench warrant issued on January 31, 2001, and to dismiss both state cases on the ground the district attorney failed to take any action on her section 1381.5 demand. The trial court dismissed the bench warrant and probation violation associated with her failure to surrender but denied Broughton's motion to dismiss the entire action, finding that Broughton had not been prejudiced by the district attorney's inaction. The court reinstated the previous order of probation with the condition Broughton serve one year in county jail. Probation was to terminate upon her release from custody.

 ██ ██ Broughton obtained a certificate of probable cause (§ 1237.5)[5] and filed a timely notice of appeal from the orders granting probation.[6]

## CONTENTION

 Broughton contends section 1381.5 requires dismissal of an action if the district attorney fails to act on a demand for a "speedy trial" by a probationer awaiting a probation revocation hearing.

## DISCUSSION

Section 1381.5 permits federal prisoners with pending criminal proceedings in state court to request to be brought to trial or for sentencing in the

---

[5]Section 1237.5 provides: "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty" without first obtaining a certificate of probable cause for such an appeal. Because Broughton does not challenge the validity of her plea but only the denial of the motion to dismiss under section 1381.5, a certificate of probable cause was not required. (*People v. Brown* (1968) 260 Cal.App.2d 745, 746 [67 Cal.Rptr. 288].)

[6]An order granting probation is a "final judgment" for purposes of appeal (§ 1237).

state action. Upon receipt of a request of defendant for trial or sentencing, the district attorney "shall promptly inquire" of the warden of the federal correctional institution housing the defendant "whether and when such defendant can be released for trial or sentencing" in the pending state matter. (§ 1381.5.) The People must bring the defendant to trial or for sentencing within 90 days of receiving an assent from the federal authorities for defendant's release for trial or sentencing in the state matter. "If [the] defendant is not brought to trial or for sentencing as provided [in section 1381.5], the court in which the action is pending shall, on motion or suggestion of the . . . defendant or his counsel, dismiss the action." (*Ibid.*)

In a closely analogous situation involving section 1203.2a,[7] the Supreme Court held that dismissal of a criminal action was mandatory, without any showing of prejudice, if a probation officer failed to comply with the statute's procedural requirements, intended to permit a probationer

---

[7]Section 1203.2a provides: "If any defendant who has been released on probation is committed to a prison in this state or another state for another offense, the court which released him or her on probation shall have jurisdiction to impose sentence, if no sentence has previously been imposed for the offense for which he or she was granted probation, in the absence of the defendant, on the request of the defendant made through his or her counsel, or by himself or herself in writing, if such writing is signed in the presence of the warden of the prison in which he or she is confined or the duly authorized representative of the warden, and the warden or his or her representative attests both that the defendant has made and signed such request and that he or she states that he or she wishes the court to impose sentence in the case in which he or she was released on probation, in his or her absence and without him or her being represented by counsel. [¶] The probation officer may, upon learning of the defendant's imprisonment, and must within 30 days after being notified in writing by the defendant or his or her counsel, or the warden or duly authorized representative of the prison in which the defendant is confined, report such commitment to the court which released him or her on probation. [¶] Upon being informed by the probation officer of the defendant's confinement, or upon receipt from the warden or duly authorized representative of any prison in this state or another state of a certificate showing that the defendant is confined in prison, the court shall issue its commitment if sentence has previously been imposed. If sentence has not been previously imposed and if the defendant has requested the court through counsel or in writing in the manner herein provided to impose sentence in this case in which he or she was released on probation in his or her absence and without the presence of counsel to represent him or her, the court shall impose sentence and issue its commitment, or shall make other final order terminating its jurisdiction over the defendant in the case in which the order of probation was made. If the case is one in which sentence has previously imposed, the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 60 days after being notified of the confinement. If the case is one in which sentence has not previously been imposed, the court is deprived of jurisdiction over defendant if it does not impose sentence and issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 30 days after defendant has, in the manner prescribed by this section, requested imposition of sentence. [¶] . . . [¶] In the event the probation officer fails to report such commitment to the court or the court fails to impose sentence as herein provided, the court shall be deprived thereafter of all jurisdiction it may have retained in the granting of probation in said case."

who has been incarcerated on another offense to request immediate imposition of sentence by the probationary court. (*In re Hoddinott* (1996) 12 Cal.4th 992, 1005 [50 Cal.Rptr.2d 706, 911 P.2d 1381] (*Hoddinott*).) Although not citing *Hoddinott*, Broughton urges us to adopt a similar construction of section 1381.5, compelling dismissal of the underlying criminal action whenever the district attorney fails to comply with the section's mandate that he or she promptly inquire whether the defendant can be released for trial or sentencing.[8] ▬ ▬ Before we may address Broughton's contention, however, we must determine whether section 1381.5 is available to probationers as to whom imposition of sentence was suspended when probation was granted at the initial sentencing hearing.[9]

 ▬ ██ ▬ ██ The handful of Courts of Appeal that have considered this issue have concluded, most often in dicta, that section 1381.5, along with its companion statute section 1381,[10] is applicable to probationers as to whom impositions of sentence was suspended because they "remain to be sentenced" in a pending criminal proceeding. (See, e.g., *Rudman v. Superior Court* (1973) 36 Cal.App.3d 22, 26-27 [111 Cal.Rptr. 249] (*Rudman*); *Boles v. Superior Court* (1974) 37 Cal.App.3d 479, 484 [112 Cal.Rptr. 286]; *People v. Johnson* (1987) 195 Cal.App.3d 510, 514 [240 Cal.Rptr. 748], disapproved on another ground in *Hoddinott, supra,* 12 Cal.4th at p. 1005.)[11] Those decisions, however, have employed an overly

---

[8]Unlike section 1381.5, which directs that the trial court shall "dismiss the action" if a defendant is not brought to trial or for sentencing as required by the statute, section 1203.2a provides that the court "shall be deprived of jurisdiction over defendant" in the event the probation officers fails to comply with the statute's requirements or the court fails to impose sentence as prescribed by the section.

[9]Because Broughton has already served her one year in county jail and probation has terminated, the issue on appeal is "technically moot." (*Hoddinott, supra,* 12 Cal.4th at p. 996, fn. 3.) We exercise our discretion to address the issue because proper adjudication of section 1381.5 as applied to probationers is a recurring issue of public importance. (See *Hoddinott, supra,* 12 Cal.4th at p. 996; *Butt v. State of California* (1992) 4 Cal.4th 668, 677, fn. 7 [15 Cal.Rptr.2d 480, 842 P.2d 1240].)

[10]Section 1381 affords a similar right to state prisoners. Because of the analogous nature of the two statutes, cases interpreting section 1381 are persuasive authority for interpreting section 1381.5. (*People v. Garcia* (1985) 171 Cal.App.3d 1187, 1191 [217 Cal.Rptr. 783].)

[11]Probationers who were sentenced following conviction, but as to whom execution of sentence was suspended when they were placed on probation, fall outside the scope of section 1381.5 under any interpretation of the statute. (*Boles v. Superior Court, supra,* 37 Cal.App.3d at p. 484.) Providing different procedural rights to probationers depending on whether imposition or execution of sentence has been suspended does not violate the equal protection clause of the United States Constitution or the parallel provisions of the California Constitution. (*Id.* at p. 485.)

technical interpretation of sections 1381 and 1381.5 that is inconsistent with the statutes' overall language and purpose and leads to anomalous consequences.[12]

### 1. *Section 1381.5 Does Not Apply to Incarcerated Probationers Awaiting a Probation Revocation Hearing*

■ In this case we must determine whether section 1381.5 applies to an individual who has been tried and convicted and who then appeared at a timely initial sentencing hearing at which imposition of sentence was suspended when the court placed the defendant on probation. Specifically, is such an individual when facing a probation revocation hearing a defendant who "remains to be sentenced" and thus entitled to be "brought . . . for sentencing" within the time constraints of section 1381.5, with the consequence of the failure to do so dismissal of the underlying conviction?

■ In approaching this task we are guided by well-established principles of statutory interpretation: "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*People v. Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].)

■ The plain meaning of the actual words used in section 1381.5 manifests the Legislature's intent to provide a speedy trial right to persons

---

[12]Although in *Boles v. Superior Court, supra,* 37 Cal.App.3d at page 484, and *People v. Johnson, supra,* 195 Cal.App.3d at page 514, the Court of Appeal, Third District read section 1381 as applicable to an in-custody defendant facing a probation revocation hearing, in both cases the court held the defendant fell outside the scope of the statute—in *Boles* because the defendant had been sentenced, although execution of sentence was suspended; and in *Johnson* because the defendant was in custody out of state. Those decisions, therefore, did not need to consider whether their overly literal interpretation of a "defendant awaiting sentence" was reasonable in light of the purpose of section 1381 or the policies it was designed to further. As discussed *post,* at pages 317-318, in *Rudman, supra,* 36 Cal.App.3d at page 28, the only court to directly apply section 1381 to a probationer awaiting a probation violation hearing, the court avoided the incongruous result that followed from its construction of section 1381 by simply ignoring the statute's mandate that the entire action be dismissed. None of these cases contain a persuasive analysis of the issue before us.

awaiting trial or an initial sentencing hearing, not those facing probation revocation hearings. (See *People v. Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313] [" 'In interpreting statutes, we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law . . . .' [Citation.]"]; *People v. Farell* (2002) 28 Cal.4th 381, 386 [121 Cal.Rptr.2d 603, 48 P.3d 1155] [best indication of legislative intent appears in the language of the enactment].)

The requirement that a defendant be brought to court "for sentencing" does not usually connote an appearance for a probation revocation hearing at which the court may find no violation occurred or, notwithstanding a violation, may continue probation on the same or modified terms. In fact, a defendant who has been placed on probation has already been brought before the court "for sentencing," fulfilling the mandate of the statute, although imposition of sentence has been suspended with the grant of probation. If the purpose of section 1381.5 were to ensure a prompt probation revocation hearing, moreover, there would be no need to distinguish between probationers for whom execution of sentence was suspended and those for whom imposition of sentence was suspended, nor would there be any reason to require dismissal of the entire action, rather than simply the probation violation charge, as the sanction for violation of the statute's time requirements.

When interpreting a statute, " ' "[w]ords must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." [Citation.] Interpretations that lead to absurd results or render words surplusage are to be avoided. [Citation.]' " (*People v. Loeun, supra,* 17 Cal.4th at p. 9.) If sections 1381 and 1381.5 were to apply to probation revocation hearings, the "action," not the pending proceeding, must be dismissed if the defendant is not brought to the hearing in the manner prescribed by those sections. Such a dismissal would lead to the peculiar result that a probationer could have a conviction dismissed under a "speedy trial" statute months or even years after the conclusion of his or her trial and appearance at a timely sentencing hearing at which imposition of sentence was waived in favor of probation.

In tacit recognition that such a result could not have been intended by the Legislature, in the only case to actually apply section 1381.5 or section 1381 to an incarcerated defendant facing a probation violation hearing, *Rudman, supra,* 36 Cal.App.3d 22, the court simply ignored the express statutory command to dismiss "the action" and, without any analysis or explanation, directed the trial court to dismiss only the probation violation charge. (*Id.* at pp. 27-28.) A far more reasonable construction of the statute is to limit its application to defendants awaiting an initial sentencing hearing.

### 2. Section 1381.5 Is a Codification of the Constitutional Right to "Speedy Trial" as Applied to Incarcerated Persons

The history of the 1971 amendments to section 1381.5, which added the language we construe in this case, confirms the Legislature's purpose to expand the speedy trial right of individuals in custody facing new charges to include prisoners who had been tried and convicted but were still awaiting entry of judgment or other final appealable order—that is, those defendants who had not yet been heard at an *initial* sentencing hearing. When first enacted in 1963, section 1381.5 provided individuals in federal custody with a procedure to obtain a speedy trial on any pending "indictment, information, or complaint charging such defendant with the commission of a crime . . . ." (Stats. 1963 ch. 1567, § 1, p. 3151.)[13] A similar right was afforded to state prisoners under section 1381. (Stats. 1933, ch. 650, § 1, p. 1689.) Under both statutes the People's failure to bring the defendant "to trial" as prescribed required the court to dismiss "the charge." (Stats. 1933, ch. 650, § 1, p. 1689 [§ 1381]; Stats. 1963, ch. 1567, § 1, p. 3151 [§ 1381.5].)

■ Former sections 1381.5 and 1381 were enacted in recognition that the right to a speedy trial extends to all individuals, including convicts. (*Barker v. Municipal Court* (1966) 64 Cal.2d 806, 813 [51 Cal.Rptr. 921, 415 P.2d 809] (*Barker*).) As the Supreme Court explained, the guarantee of a speedy trial, whether secured by the Constitution or by statute, " 'serves a three-fold purpose. It protects the accused . . . against prolonged imprisonment; it relieves him of the anxiety and public suspicion attendant upon an untried accusation of crime; and . . . it prevents him from being "exposed to the hazard of a trial, after so great a lapse of time" that "the means of proving his innocence may not be within his reach"—as, for instance, by the loss of witnesses or the dulling of memory.' [Citations.] [¶] The foregoing purposes are equally served with respect to one already imprisoned for another crime. Even the purpose of preventing undue imprisonment is of some concern to a California prisoner, because if he is promptly convicted of an additional offense he may be sentenced to serve a term of imprisonment

---

[13]Prior to 1971 section 1381.5 provided: "Whenever a defendant has been convicted of a crime and has entered upon a term of imprisonment therefor in a federal correctional institution, and at the time of entry upon such term of imprisonment or at any time during such term of imprisonment *there is pending in any court of this State any indictment, information, or complaint charging such defendant with the commission of a crime,* it is mandatory that the district attorney of the county in which such charge is pending, upon receiving from such defendant a request *that he be brought to trial on such charge,* promptly inquire of the warden or other head of the federal correctional institution in which such defendant is confined whether and when such defendant can be released for trial. . . . [¶] If an action is not brought to trial as provided by this section, the court in which the charge is pending shall, on motion or suggestion of . . . the defendant or his counsel, dismiss the charge." (Stats. 1963, ch. 1567, § 1, pp. 3151- 3152, italics added.)

concurrently with the term already imposed (Pen. Code, § 669); if a defendant is brought to trial only after his sentence on another charge has been completed, the possibility of concurrent sentences is denied him." (*Ibid.*)

In 1968, in *People v. Brown, supra,* 260 Cal.App.2d at page 751 (*Brown*), the Court of Appeal confronted the question whether former section 1381.5 applied to a defendant who had been convicted, but, because he was in federal custody, had not appeared at his initial sentencing hearing. Relying on *Barker*'s statement of the purposes for a speedy trial statute, the court held the term " 'brought to trial' " in former section 1381.5 had to include all aspects of the prosecution through "the entry of a judgment or other final, appealable order. The imposition of sentence is an essential part of the speedy trial guaranteed to all accused." (*Brown,* at pp. 750-751.) Accordingly, the court held the district attorney's delay in inquiring of federal authorities whether and when defendant could be released from federal custody for his sentencing in the state case violated the directive of section 1381.5 and required the trial court to dismiss the action. (*Brown,* at pp. 750-751.)

In 1971 the Legislature amended sections 1381.5 and 1381 to extend the right to a "speedy trial" to prisoners against whom "there is pending in any court of this state . . . any criminal proceeding wherein the *defendant remains to be sentenced . . . . .*" (Italics added.) The sanction for violating the statute was also changed from dismissal of the "charge" to dismissal of the "action." (Stats. 1971, ch. 1556, § 2, p. 3080 [§ 1381.5]; Stats. 1971, ch 1556, § 1, p. 3078 [§ 1381].) In expanding the "speedy trial" right from individuals awaiting trial to include those awaiting sentencing, the Legislature intended to "conform[] Section 1381.5 to th[e] decision" in *Brown, supra,* 260 Cal.App.2d 745 and thereby "[p]romote the speedy disposition of pending sentencings for defendants imprisoned in this state or in a federal correctional institution." (Sen. Com. on Judiciary, com. on Sen. Bill No. 1508 (1971 Reg. Sess.) as introduced, p. 2.)

The fundamental policies advanced by speedy trial statutes such as section 1381.5—avoiding prolonged imprisonment, limiting anxiety attendant to an unresolved criminal charge, reducing the effect of lapse of time on trial witnesses and providing the opportunity for imposition of concurrent sentence—apply to defendants who have not been afforded a sentencing hearing, as well as to defendants who have not yet been tried. (See, e.g., *Brown, supra,* 260 Cal.App.2d 745.) ▮▮ ▮▮▮ Those policies are not similarly implicated, however, by the timing of a sentencing hearing following revocation of probation for a probationer whose case has been prosecuted to a conviction and who accepted probation at a timely sentencing hearing in lieu

of speedy imposition of sentence.[14] Unlike a defendant who has not appeared at an initial sentencing hearing, a probationer is not languishing pending a "final judgment"; his case has been prosecuted to a "final judgment." (See § 1237 [order granting probation is "a final judgment" for purposes of appeal].) Indeed, a probationer who waives speedy imposition of sentence in lieu of probation is no different from any other defendant who, faced with the opportunity for a speedy trial, nonetheless expressly waives it in lieu of some perceived benefit, whether that benefit is the time to prepare for trial or, as in this case, the clemency of probation.

### 3. Probationers May Seek Concurrent Sentences by Using the Procedure Set Forth in Section 1203.2a

Our conclusion that section 1381.5 is not applicable to probation revocation hearings is reinforced by the fact that the Legislature has provided a procedure by which state probationers incarcerated on another matter, like Broughton, may seek a concurrent prison term from the probationary court. Pursuant to section 1203.2a, a defendant who has been placed on probation and is thereafter incarcerated for another offense may request imposition of sentence or some other final order terminating the probationary court's jurisdiction.[15] (§ 1203.2a; *Hoddinott, supra,* 12 Cal.4th at p. 1000; but cf. *Rudman, supra,* 36 Cal.App.3d at p. 27 [§§ 1381.5 and 1203.2a do not conflict; an "unsentenced probationer" has the option to employ either section].)

The purpose of section 1203.2a is to provide a mechanism advising the probationary court of the subsequent confinement, thereby permitting the probationary court to consider imposing a concurrent sentence if that is the court's decision. (*Hoddinott, supra,* 12 Cal.4th at p. 999; *In re White* (1969) 1 Cal.3d 207, 211 [81 Cal.Rptr. 780, 460 P.2d 980].) Although the opportunity for concurrent sentences is one of the factors supporting a "speedy trial" right for convicts (*Barker, supra,* 64 Cal.2d at p. 813), and certainly the main factor underlying section 1203.2a (*Hoddinott, supra,* 12 Cal.4th at p. 999; *Hayes v. Superior Court* (1971) 6 Cal.3d 216, 220 [98 Cal.Rptr. 449, 490 P.2d 1137]), section 1203.2a is not a speedy trial statute. Rather, section 1203.2a is a legislative recognition that the probationary court may inadvertently deny the probationer an opportunity for a concurrent sentence if not made aware of the probationer's incarceration. As such, section 1203.2a is a

---

[14]There are no statutory time limits on when a probation revocation hearing must be held. Due process requires that any delay not be "unreasonable." (See *Morrissey v. Brewer* (1972) 408 U.S. 471, 485 [92 S.Ct. 2593, 2602, 33 L.Ed.2d 484] [parole revocation hearing]; *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 782 [93 S.Ct. 1756, 1759-1760, 36 L.Ed.2d 656] [extending due process safeguards established in *Morrissey* to probation revocations].)

[15]The text of section 1203.2a is set out fully in footnote 8, *ante,* at page 315.

corollary to section 669, directing the trial court to determine whether terms of imprisonment are to run concurrently or consecutively and providing that terms are to run concurrently if the trial court fails to make the required determination. (*In re White, supra,* 1 Cal.3d at p. 211.)

4. *Viewing Sections 1381.5 and 1203.2a in the Context of the Statutory Schemes of Which They Are Part Further Demonstrates Section 1381.5 Was Not Intended to Apply to Probationers, Regardless of Whether Imposition or Execution of Sentence Was Suspended at the Initial Sentencing Hearing*

The differences between sections 1203.2a and 1381.5 and when and to whom they are to be applied are underscored by their respective locations within the Penal Code. (See *People v. Pieters, supra,* 52 Cal.3d at p. 899 ["[W]e do not construe statutes in isolation, but rather . . . 'with reference to the entire scheme of law of which it is [a] part so that the whole may be harmonized and retain effectiveness.' "].) Section 1381.5, appearing in a chapter entitled "Dismissal of the Action for Want of Prosecution or Otherwise," is part of a statutory scheme contemplating dismissal of the action *prior to* the completion of the prosecution with an initial sentencing hearing. (See, e.g., §§ 1382 [dismissal of action for failure to file information or bring case to trial within time limit]; 1385 [dismissal of action, cause of action or charge in "furtherance of justice" either prior to or at sentencing hearing].) Section 1203.2a, in contrast, appearing in a chapter entitled "Judgment and Execution," expressly applies, along with every other statute in that statutory scheme, *after* a conviction and an initial sentencing hearing.[16]

Section 1381.5 also must be read in conjunction with section 1387, which, appearing in the same chapter of the Penal Code, permits the People to refile an action dismissed under section 1381.5. (§ 1387[17]; *Crockett v. Superior Court* (1975) 14 Cal.3d 433, 439 [121 Cal.Rptr. 457, 535 P.2d 321] [§ 1387 constitutionally permits prosecutor to refile felony action dismissed under § 1381 in absence of defendant's demonstration of actual prejudice]; *People v. Gutierrez* (1994) 30 Cal.App.4th 105, 111-112 [35 Cal.Rptr.2d 526].) As the Supreme Court explained, section 1387's authorization to refile a charge following a dismissal under section 1381 is consistent with the purpose of protecting a defendant's right to a speedy trial. "When th[e] charge has been

---

[16]Section 1203.2a provides alternative procedures depending on whether imposition or execution of sentence was suspended when probation was granted.

[17]Section 1387 provides in part: "Dismissal as bar to prosecution; exceptions [¶] (a) An order terminating an action pursuant to this chapter . . . is a bar to any other prosecution for the same offense if it is a felony or if it is a misdemeanor charged together with a felony and the action has been previously terminated pursuant to this chapter . . . , or if it is a misdemeanor not charged together with a felony . . . ."

dismissed against [the defendant] . . . because of failure to bring him to trial, the charge is no longer pending against him. We see no reason therefore why another information may not be filed against him after such dismissal. *He has had the first charge dismissed and thus his right to a speedy trial protected. The filing of a new information for the same offense commences a new period of time.*" (*People v. Godlewski* (1943) 22 Cal.2d 677, 682-683 [140 P.2d 381], italics added; see also *Gutierrez,* at p. 111.)

Although the statutory authorization to refile the action (§ 1387) makes sense if the action is dismissed for failure to prosecute in a timely fashion (including the failure to bring a defendant to a timely initial sentencing hearing), it is illogical to apply that section to a probationer awaiting a probation revocation hearing. The prosecution of such a defendant necessarily concluded upon the grant of probation, a final, appealable order. (See *Brown, supra,* 260 Cal.App.2d at p. 751.) By the time a defendant is faced with a pending probation revocation hearing, neither the dismissal of the underlying action nor the refiling of it under a "new time clock" would in any way "protect" or further his or her speedy trial rights.

Section 1203.2a, in contrast, contemplates neither a "dismissal" of an action nor the "refiling" of an action precisely because the section only comes into effect once the action has been prosecuted to a final, appealable order, regardless of whether imposition or execution of sentence has been suspended. (§ 1237.) Under section 1203.2a, the sanction for failing to revoke probation and impose sentence or execute sentence if sentence has already been imposed, within the prescribed time period, is not "dismissal" of the action but, appropriately, the deprivation of the probationary court's further jurisdiction in the matter. In effect, section 1203.2a tells the probationary court, act on defendant's demand that you terminate your jurisdiction, either through imposition of sentence or execution of sentence if already imposed, or lose jurisdiction by operation of this statute.

Deprivation of the probationary court's continuing jurisdiction is thus wholly consistent with section 1203.2a's overall purpose of permitting the probationary court to consider imposing a concurrent sentence and " 'preclud[ing] the inadvertent imposition of consecutive sentences by depriving the court of further jurisdiction over the defendant' when the statutory time limits are not observed." (*Hoddinott, supra,* 12 Cal.4th at p. 999.) Interpreting section 1381.5's dismissal of the "action" to apply to probationers after an initial sentencing hearing and the issuance of a final appealable order, in contrast, would be nonsensical, undermining both the purpose of section 1381.5 and the statutory scheme of which it is part.

### 5. *Broughton's Demand Did Not Comport with the Requirements of Section 1203.2a*

Even though Broughton intended to invoke a right to a speedy trial under section 1381.5, if either the April motion or the October demand was sufficient to trigger section 1203.2a, she is entitled to the protection of that statute. (See *In re Flores* (1983) 140 Cal.App.3d 1019, 1022 [190 Cal.Rptr. 388] [although § 1381 not available to sentenced probationer, his demand letter should have been evaluated under the requirements of § 1203.2a].) As applied to a probationer whose sentence has not been imposed, the probationary court has 30 days from the receipt of a *valid, formal request* from the defendant within which to impose sentence or lose further jurisdiction. (§ 1203.2a; *Hoddinott, supra,* 12 Cal.4th at p. 999.) Broughton's April motion did not meet the strict requirements for such a request; specifically, it did not include a waiver of the right to be present and to be represented by counsel. (§ 1203.2a.) In the absence of such a waiver, the court is without the constitutional power to impose sentence in the defendant's absence. (*Hoddinott,* at p. 999; see *Hayes v. Superior Court, supra,* 6 Cal.3d at p. 225 [that § 1203.2a affords opportunity for concurrent sentences, if that is the trial court's discretion, only after probationer waives his or her right to be present and represented by counsel is a "reasonable method of effectuating proper legislative purposes" and is not unconstitutional].)

Section 1203.2a also imposes a duty upon a probation officer to advise the probationary court within 30 days after being notified in writing of the defendant's confinement. The probation officer's failure to do so deprives the court of further jurisdiction, whether or not the letter includes a waiver of the right to be present and represented by counsel. (*Hoddinott, supra,* 12 Cal.4th at p. 1000; § 1203.2a) The record before us is silent as to whether the April motion or October demand was ever delivered to Broughton's probation officer. We therefore have no basis to find that section 1203.2a was invoked or that the trial court lacked jurisdiction to set aside the prior order revoking probation and to grant probation under the terms and conditions afforded.

Accordingly, the trial court did not err in denying Broughton's motion to dismiss the actions under section 1381.5 or in reinstating its earlier order of probation with the additional condition of one year in county jail.

### DISPOSITION

The judgments (orders granting probation) in case Nos. LA031136 and SA034513 are affirmed.

Woods, J., concurred.

**JOHNSON, J.**—I respectfully dissent.

I first want to compliment the majority for a sophisticated, indeed intricate, opinion explaining why the Legislature did not mean what it said in the statute at issue. One of the interesting and also confounding attributes of the many "canons" of legislative interpretation is that they often are in conflict and can be used to justify divergent interpretations of a given statute or statutory scheme. In this case, the majority fires a full battery of such canons aimed at demolishing the "literal" language the Legislature used to define who was entitled to the benefit of Penal Code section 1381.5. Nonetheless, I am persuaded the prior courts got it right, albeit in dictum.[1] In my view, section 1381.5 does apply to California probationers who are in custody as federal prisoners.

The issue is rather simple. Does the clause "*any* criminal proceeding wherein the defendant *remains to be sentenced*"[2] include probationers who have yet to receive a term of confinement for an alleged probation violation? That is, has someone who received probation been "sentenced" or is she only sentenced when the court finds a violation of probation and imposes a term of imprisonment? Or assuming the initial grant of probation does constitute a "sentencing" does a later probation revocation proceeding represent a second "criminal proceeding wherein the defendant remains to be sentenced?" I grant the language is susceptible to either of these interpretations, but either one yields the same result—a probation revocation proceeding falls within the broad term "*any* criminal proceeding wherein the defendant remains to be sentenced."

---

[1]See, e.g., *People v. Johnson* (1987) 195 Cal.App.3d 510, 514 [240 Cal.Rptr. 748], disapproved on other grounds in *In re Hoddinott* (1996) 12 Cal.4th 992, 1005 [50 Cal.Rptr.2d 706, 911 P.2d 1381], *Boles v. Superior Court* (1974) 37 Cal.App.3d 479, 484 [112 Cal.Rptr. 286], and *Rudman v. Superior Court* (1973) 36 Cal.App.3d 22, 26-27 [111 Cal.Rptr. 249].

[2]Penal Code section 1381.5 provides: "Whenever a defendant has been convicted of a crime and has entered upon a term of imprisonment therefor in a federal correctional institution located in this state, and at the time of entry upon such term of imprisonment or at any time during such term of imprisonment there is pending in any court of this state any criminal indictment, information, complaint, or any criminal proceeding wherein the defendant remains to be sentenced the district attorney . . . upon receiving from such defendant a request that he be brought to trial or for sentencing, shall *promptly inquire* of the warden or other head of the federal correctional institution in which such defendant is confined whether and when such defendant can be released for trial or for sentencing. If an assent from authorized federal authorities for release of the defendant for trial or sentencing is received by the district attorney he shall bring him to trial or sentencing within 90 days after receipt of such assent, unless the federal authorities specify a date of release after 90 days, in which event the district attorney shall bring the prisoner to trial or sentencing at such specified time . . . . [¶] If a defendant is not brought to trial or for sentencing as provided by this section, the court in which the action is pending shall, on motion or suggestion of the district attorney, or representative of the United States, or the defendant or his counsel, dismiss the action." (Italics added.)

To find support for the conclusion a probationer is *not* "sentenced" until given a term of imprisonment pursuant to revocation of her probationary status, one need look no farther than Penal Code section 1203.2a, the code section the majority finds clearly applicable to probationers.[3] That statute speaks of defendants being "released on probation" not as "sentenced to probation." It further distinguishes the status of being on probation from receiving a sentence in defining the class of defendants and situations to which its provisions apply as those where "*no sentence has previously been imposed* for the offense for which he or she was *granted probation . . . .*"

From this language in Penal Code section 1203.2a, it is more than apparent the Legislature considers a probationer "remains to be sentenced" until the court revokes her probation and imposes a term of confinement. That is, a release on probation is not a sentence. Accordingly, until probation is revoked and a term of confinement imposed, a defendant in federal

---

[3]Penal Code section 1203.2a provides: "If any defendant who has been released on probation is committed to a prison in this state or another state for another offense, the court which released him or her on probation shall have jurisdiction to impose sentence, if no sentence has previously been imposed for the offense for which he or she was granted probation, in the absence of the defendant, on the request of the defendant made through his or her counsel, or by himself or herself in writing, if such writing is signed in the presence of the warden of the prison in which he or she is confined or the duly authorized representative of the warden, and the warden or his or her representative attests both that the defendant has made and signed such request and that he or she states that he or she wishes the court to impose sentence in the case in which he or she was released on probation, in his or her absence and without him or her being represented by counsel. [¶] The probation officer may, upon learning of the defendant's imprisonment, and must within 30 days after being notified in writing by the defendant or his or her counsel, or the warden or duly authorized representative of the prison in which the defendant is confined, report such commitment to the court which released him or her on probation. [¶] Upon being informed by the probation officer of the defendant's confinement, or upon receipt from the warden or duly authorized representative of any prison in this state or another state of a certificate showing that the defendant is confined in prison, the court shall issue its commitment if sentence has previously been imposed. If sentence has not been previously imposed and if the defendant has requested the court through counsel or in writing in the manner herein provided to impose sentence in the case in which he or she was released on probation in his or her absence and without the presence of counsel to represent him or her, the court shall impose sentence and issue its commitment, or shall make other final order terminating its jurisdiction over the defendant in the case in which the order of probation was made. If the case is one in which sentence has previously been imposed, the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 60 days after being notified of the confinement. If the case is one in which sentence has not previously been imposed, the court is deprived of jurisdiction over defendant if it does not impose sentence and issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 30 days after defendant has, in the manner prescribed by this section, requested imposition of sentence. [¶] . . . [¶] In the event the probation officer fails to report such commitment to the court or the court fails to impose sentence as herein provided, the court shall be deprived thereafter of all jurisdiction it may have retained in the granting of probation in said case."

custody is subject to a "pending . . . criminal proceeding where [she] remains to be sentenced." As a consequence, she is entitled to invoke the protections of section 1381.5.

But as pointed out above, even if a defendant who receives probation is considered to have been "sentenced," that does not mean Penal Code section 1381.5 is inapplicable when she faces probation revocation. This second proceeding also qualifies as a "criminal proceeding wherein the defendant remains to be sentenced." It can be construed as a second stage of the initial sentencing or as a separate proceeding. But once again, either way it constitutes a "criminal proceeding wherein the defendant remains to be sentenced." No one can seriously dispute a probation revocation hearing is a "criminal proceeding." And it seems difficult to dispute it is a proceeding where a "sentence is imposed" and until which it occurs the defendant "remains to be sentenced."

At the policy level as opposed to interpretation of the statutory language the Legislature used, the majority seeks to distinguish a defendant's interest in a timely first sentencing from her interest in a timely probation revocation proceeding. (Maj. opn., *ante*, at pp. 319-320.) The majority summarizes these policy considerations as "avoiding prolonged imprisonment, limiting anxiety attendant to an unresolved criminal charge, reducing the effect of lapse of time on trial witnesses, and providing the opportunity for imposition of concurrent sentence." (Maj. opn., *ante*, at p. 319.) These policies, the majority emphasizes, "apply to defendants who have not been afforded a sentencing hearing" as well as those who have not yet been tried. (*Ibid.*) I submit they also apply to probationers who are alleged to have violated probation. Without the protection of Penal Code section 1385.1, the possibility of probation revocation and the potential prison term resulting therefrom may remain unresolved until the federal term is completed—perhaps many years hence. As a result, such probationers may experience anxiety, may lose witnesses who could disprove the alleged grounds for revocation, lose the opportunity for a concurrent sentence, and end up with prolonged imprisonment.

The majority makes much of Penal Code section 1203.2a and the opportunity it affords for probationers to seek a concurrent sentence. (Maj. opn., *ante* at pp. 321-322.) Unfortunately, this section requires probationers who wish to take advantage of its benefits to throw themselves on the mercy of the court. In order to plead for this measure of mercy, probationers must give up any opportunity to challenge the allegations they violated the terms of probation. They must surrender their rights to counsel or even to personally attend the proceeding—if it can be called that—where the trial court decides

whether to grant the request for a concurrent sentence. This may be an adequate remedy for those who know they have no chance of defeating the revocation allegations or whose maximum term upon revocation will expire before—or soon after—the term they are serving presently. But for many probationers it is no substitute for the opportunity afforded by Penal Code section 1385.1 (and its companion § 1381).

For these reasons, I would interpret Penal Code section 1385.1 as embracing alleged probation violators as well as others involved in "criminal proceedings wherein the defendant remains to be sentenced."

Appellant's petition for review by the Supreme Court was denied June 11, 2003. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.