Filed 2/2/24  P. v. Knox CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERNEST LEO KNOX III,<br><br>    Defendant and Appellant. | A167100<br><br>(Napa County Super. Ct.<br>No. 19CR001192) |

Ernest Leo Knox III pled no contest to inflicting corporal injury on a spouse in Napa County.  The trial court sentenced him to four years in prison, suspended execution of the sentence, and placed him on probation. Knox committed an offense in Sacramento County; as a result, the court in Napa County revoked probation and imposed sentence.  He now argues the court erred by denying his request to apply pretrial custody credits related to his Sacramento offense to his Napa sentence.  He also contends the probation revocation violated his right to due process.  We affirm.

**BACKGROUND**

In April 2019 — in Napa County — Knox punched his wife in the head multiple times and strangled her.[1]  Officers arrested him later that day.  In June 2019, he pled no contest to corporal injury on a spouse (Napa offense). (Pen. Code, § 273.5, subd. (a); further undesignated statutory references are

_____

[1] We provide additional facts when discussing Knox's arguments.

1

to this code.)  In September 2019, the trial court sentenced him to four years in prison and suspended execution of the sentence pending successful completion of three years of probation.

In July 2020 — in Sacramento County and while on probation for the Napa offense — Knox hit his wife with a heavy drinking glass, causing a five-inch laceration to her cheek that exposed muscle tissue.  In July 2021, the trial court convicted him of inflicting corporal injury on his spouse (Sacramento offense), and sentenced him to four years in prison (Sacramento sentence).  (§ 273.5, subd. (a).)

In September 2020, while criminal proceedings were pending in Sacramento County, the Napa County Probation Department filed a probation revocation petition based on Knox's failure to provide notice of a change of address (the first petition).  The Napa County Superior Court revoked probation and issued a bench warrant the same day.  In October 2021 — four days after arriving at prison to serve his Sacramento sentence — Knox learned of the warrant.  He "request[ed] disposition of untried charges in accordance with Penal Code (PC) Section 1381."  The court arraigned him on the first petition in November 2021.  In December 2021, the prosecutor filed a second probation revocation petition (the second petition), this time based on the Sacramento offense.  In March 2022, the prosecution dismissed the first petition.

In May 2022, Knox completed his Sacramento sentence.  Thereafter, he remained in custody to face the second petition.  In July, the Napa County Superior Court found the allegations in the second petition true and, on August 16, it terminated probation, sentenced Knox to prison for one year to be served consecutively to the Sacramento sentence, and granted him 406 days of credit for time served.

On August 30, 2022, the Department of Corrections notified the Napa County Superior Court Knox had completed his Sacramento sentence and, because there was no other active case at the time of the August 16 sentence, the sentence may have been in error. In January 2023, the court recalled and vacated the August 16 sentence. It then terminated probation, executed the sentence imposed in September 2019, recalled the sentence pursuant to former section 1170.03 and resentenced Knox to three years in prison (the January sentence). The court credited him with 429 days for time served.

**DISCUSSION**

Knox contends the Napa County Superior Court erroneously denied him presentence custody and conduct credit for the time he served for his Sacramento offense — from the time of his arrest in Sacramento through the completion of his Sacramento sentence — when it imposed the January sentence.[2] The Attorney General argues — and Knox does not contest — Knox already completed his January sentence, rendering the issue moot. (*Reygoza v. Superior Court* (1991) 230 Cal.App.3d 514, 519, fn. 4 [where defendant does not contest factual assertion in reply, we assume there is no factual dispute].) We agree with the Attorney General. Since Knox has already been released, awarding him presentence custody credit would not ameliorate any prejudicial consequences. (*People v. Valencia* (2014) 226 Cal.App.4th 326, 329 [where "no prejudicial collateral consequences would be ameliorated by awarding defendant . . . presentence custody credit, the issue is moot"].)

---

[2] Knox asserts — and the Attorney General does not dispute — he remained in custody through this entire period.

Knox next contends the probation revocation proceedings denied him due process, unfairly and detrimentally prolonging his time in custody and limiting the sentencing options available to him. We disagree.

After filing the first petition in September 2020, the Napa County Probation Department made no effort to locate Knox. The department knew he was residing in Sacramento County, regularly visited a person at a Sacramento location known to his probation officer, and had been reporting regularly until his Sacramento arrest. But Knox did not learn of the revocation proceedings until October 2021, when he arrived at prison to serve his Sacramento sentence. He then immediately sent a section 1381 demand — a request for disposition of any untried charges — to the Napa County Sheriff. He never informed the probation department of his Sacramento offense.

The prosecutor filed the second petition in December 2021, approximately 17 months after the arrest for the Sacramento offense, five months after his conviction, and two months after he arrived at prison to serve his Sacramento sentence. Knox was transferred to the custody of the Napa County Sheriff in April 2022 to face the petition. After his arrival, the trial court tried to advance the petition hearing to May, but Knox refused. The court held the hearing in July and found the Sacramento offense violated Knox's probation. Knox admits he never disputed the violation.

First, relying on *People v. Johnson* (1987) 195 Cal.App.3d 510 (*Johnson*), Knox argues the probation department had an affirmative duty to locate him — or at least to try and locate him — and notify him of the first petition. He claims that had the department made minimal efforts, such as performing a record check, he could have arranged a concurrent disposition

4

between his two offenses with more credit for time served.  This argument fails.

In *Johnson*, the defendant — a probationer whose *imposition* of sentence had been suspended on his first offense before he was committed to prison for a second offense — argued the trial court lacked jurisdiction to revoke probation on the first offense because the speedy or expedited sentencing requirements of sections 1203.2a and 1381 had not been met.  (*Johnson, supra*, 195 Cal.App.3d at p. 512; *People v. Hall* (1997) 59 Cal.App.4th 972, 985–986.)  Section 1203.2a offers "speedy sentencing procedures for probationers incarcerated for another offense."  (*People v. Wagner* (2009) 45 Cal.4th 1039, 1050.)  "It provides one set of procedures for probation with the imposition of sentence suspended and other procedures for probation with the execution of sentence suspended."[3]  (*Ibid.*)  Similarly, section 1381 provides expedited sentencing procedures for a defendant who " 'has been convicted,' " " 'sentenced[,]' " and " 'entered upon the *term of imprisonment*' " in one case and " 'there is pending . . . any [other] criminal proceeding wherein the defendant remains to be sentenced.' "  (*Wagner*, at p. 1049, italics and brackets added, original italics omitted.)  "[C]ases have interpreted section 1381 as requiring authorities to notify prisoners of pending proceedings so that they may invoke their right to request prompt disposition of those pending proceedings."  (*Hall*, at p. 985.)  The *Johnson* court "decided that notification of charges under section 1381 should

---

[3] A trial court may grant probation by either suspending *imposition* of sentence, or by imposing the sentence and suspending its *execution*.  (*People v. Segura* (2008) 44 Cal.4th 921, 932.)  When a court imposes sentence but suspends its *execution* — as the Napa County Superior Court did here — a sentence has been imposed, and the court must order execution of the originally imposed sentence if it revokes probation.  (*People v. Howard* (1997) 16 Cal.4th 1081, 1087–1088.)

5

similarly apply to an unsentenced probationer under section 1203.2a." (*Hall*, at p. 985.)

But here the duty in *Johnson* does not apply. (*People v. Hall, supra*, 59 Cal.App.4th at p. 985.) Unlike in *Johnson*, Knox had already been sentenced for the Napa offense, and the execution of that sentence had merely been suspended. (*Johnson, supra*, 195 Cal.App.3d at p. 512.) Although a probationer whose *imposition* of sentence has been suspended "may request prompt sentencing for the pending case, a probationer . . . who has already been sentenced but who has had the *execution* of that sentence suspended[] has no right under section 1203.2a to make such a request for sentencing." (*Hall*, at p. 985, italics added.) "Therefore, the notice which was required in *Johnson* in order to effectuate the probationer's right to request sentencing is unnecessary where that sentencing has already taken place." (*Ibid.*)

More importantly, even if *Johnson* did apply, Knox did receive timely notice of both probation revocation proceedings. Sections 1203.2a and 1381 only apply where defendants have already been "incarcerated" or begun a " 'term of imprisonment' " for their second offense, not where a defendant is in custody awaiting trial on a second offense. (*People v. Wagner, supra*, 45 Cal.4th at pp. 1049–1050.) For example, in *Johnson*, the probation department failed to notify the defendant of probation revocation proceedings while he was serving his second prison sentence. (*Johnson, supra*, 195 Cal.App.3d at p. 512.) Here, Knox received notice of the first petition when he began his Sacramento sentence. He admits he learned of the petition within four days of arriving at prison, and he promptly made a section 1381 demand. He does not contend he received delayed notice of the second petition.

Second, he argues the prosecution impermissibly delayed bringing the second petition, thus denying him due process. We disagree.

Although delay in criminal prosecution before the accused is arrested or the complaint is filed may constitute a denial of due process, probation revocation is not a criminal prosecution. (*Gagnon v. Scarpelli* (1973) 411 U.S. 778, 781–782; *People v. Catlin* (2001) 26 Cal.4th 81, 107; *People v. Cambitsis* (1980) 101 Cal.App.3d 141, 144.) "[T]he full panoply of rights accorded a defendant in a criminal trial are not required in . . . probation revocation hearings." (*Cambitsis*, at p. 144.) Due process requires only that the revocation hearing be held within a reasonable time after a probationer has been taken into custody. (*Morrissey v. Brewer* (1972) 408 U.S. 471, 488; *Scarpelli*, at p. 782.)

Here, Knox received a hearing on the second petition within three months of being taken into custody on the petition. The trial court held the hearing in July 2022, after Knox was transferred to Napa in April. Moreover, the court tried to advance the hearing to May, but Knox refused. Lastly, Knox admits he never disputed he violated probation. Therefore the delay, if any, did not prejudice Knox in defending against the petition. (*In re La Croix* (1974) 12 Cal.3d 146, 154 [a delay in a revocation hearing is not a violation of due process where it appears that no unfairness resulted].)

## DISPOSITION

The judgment is affirmed.

7

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
FUJISAKI, Acting P. J.


_____
PETROU, J.

A167100